Case number 25-5607, Dante Watts v. USA. Oral argument, 15 minutes per side. Mr. Earhart for the appellate. Good morning. Good morning, Your Honor. How are you today? Good. Nice to see you. May it please the court, I'm James Earhart, and I'm counsel on behalf of Dante Watts in this case. And as the court may note from the briefs, this is a purely a procedural case. It's not a substantive case on the merits. It's a procedural case on whether or not Mr. Watts was entitled under 2255B to an evidentiary hearing on his petition for relief under 2255, the standard being that he's entitled to a hearing unless there's no material factual dispute exists that the record did not conclusively resolve. It's our position in this case that Mr. Watts filed a petition. It raised several factual disputes, primarily four which are before this court. One is he disputed the video evidence in this case was produced by his equipment, and in essence twofold. One is that it was actually produced on the date it was suggested it was created, indicating that he was in prison, in jail at the time of the alleged video, and whether or not it was his... I'll just interrupt you on that. Wasn't that subject to, didn't the agent who testified about when the videos were produced actually correct himself? I think at first he said July 17th, which I believe is the date that your client was incarcerated, but the actual date was June 17th. Like do we even have to deal with that issue? Your Honor, no. I was just simply pointing out that these were the issues that he raised initially in the 2255, and I do acknowledge that there was a clarification on the record at that time. However, the understanding was a different date. In this particular case, it's an ineffective assistance of counsel. Can I ask you on the ineffective assistance point? Maybe I'm just missing how to think about it, but you know, he has a lot of money, 6.5 million dollars, and one explanation for this was that, well, he did very well at the casinos, so you shouldn't be surprised he has all this money, and the ineffective assistance is why didn't the lawyer go get evidence from casinos to show his winnings or bank accounts, whatever it might have been, and I thought the way we usually did ineffective assistance claims is you showed that there was, well, literally gold at the end of the rainbow, that, you know, had they done the search, here's what they would have found, you know. The sister would have been able to say, yes, he went to the casino, and yes, he won lots and lots of money. But here, it's just a pure fishing expedition. There's no evidence of this. In fact, the only evidence in the record is that he lost a lot of money at casinos, and of course, what's even more puzzling about it is he has access to his own bank accounts, and bank accounts would show money coming from the Detroit casino, or the Kentucky casino, or the Cincinnati casino, so it's just very, it's just really strange. I'm not saying the theory is crazy, but I don't understand why you get a hearing when you don't even begin to connect this to a plausible ground. Well, your honor, my understanding is the trial, the testimony at trial was they were showing that he gambled excessive amounts of money at the casino, was primarily at, I believe it's the Tropicana. It wasn't most of the evidence that he lost money. Yes, your honor. 6.5 million understates, and if you'd actually been an attorney who put in evidence of all the casino stuff, we would have learned that, well, he actually made about 20 million from the drug trade. That wouldn't have been very helpful. That strikes me as effective assistance of counsel, not ineffective assistance. Assuming that that's what the records would show. Well, the only thing we know is he lost money. Yes, correct, your honor, and that's, that is one of... There's an affidavit that says, oh, I was with him when he just, he really hit it big in Cincinnati. Well, your honor, that is Mr. Watt's complaint about his trial counsel is that he indicated that he advised his trial counsel that he... I'm not talking about it's your job. I'm sorry. That's your job. One, the lawyer on habeas is supposed to show the gold at the end of the rainbow. Like, here's the proof that this was a cognizable mistake because I went and talked to the sister. I went and talked to the casino. I went and looked at the bank account unlike the attorney at trial, and here's the kinds of things it would have shown. Your honor, at the stage that we were at in this proceeding, it was simply the filing of his petition, raising the allegations. We asked to be allowed to do two things. One, conduct discovery to support his allegations, and then second, to have an evidentiary hearing once we were allowed to conduct discovery. None of that was allowed. It was simply denied at the stage of his allegation. Well, first of all, that's abusive discretion, but that's probably because the district court judge had the same reaction I had, or am having, which is where's the plausible evidence that this is a coherent theory? Your honor, I believe that that, I understand exactly what the court's saying, and I appreciate that, but that's not the standard under 2255B. If you don't, the burden isn't on the defendant to prove his case at the petition stage. The petition... You're supposed to be able to say there's some plausibility that this would show something. There's some, I'm sorry, your honor. Some plausibility this would show something and make a difference in the case. Yeah, and his position is that it would show a difference if his financial records were thoroughly investigated. Why couldn't you investigate your client's financial records? Who needs discovery? It's your client, who has a bank account. Just ask him, can I look, can I go to the bank and look at the account to show money coming in, money coming out? And geez, this incredible day he had in the Cincinnati casino. For one reason is that the casino records will only be released pursuant to a subpoena. They're not going to release their records to me upon a request, first off. There's money, the bank account is not the casino, that's his bank account. Yes, your honor. Cincinnati Casino, one million dollars, June 4th, the big day. Your honor, and I guess, and I understand that, but under 2255, at the stage that we were at, the stage that we were at is simply, it's similar to a civil case. Well, it is a civil case, actually it's a 2255. It's the filing of the complaint, and the complaint makes the allegations that the petitioner is raising in his 2255. Tell me the specific factual, material factual disputes that, you know, the path not taken here, a hearing, you come into court, you have a hearing. What type of evidence would you be introducing? Well, the first thing that we would introduce is that there had been unauthorized access to his cell phone. That is, his cell phone was incapable of producing the videos which were introduced at trial, and that we needed a forensic examination of both the cell phone and the metadata of those videos to support that, to provide to an expert witness. I'll be honest, that's a reach for me, just trying to understand the theory. We're not technological experts, but just trying to understand what you could show that this phone just kind of all of a sudden by itself. What we would show is, and we did indicate in the original petition, that according to Apple, his phone is incapable of producing the videos of him making a video call. That it's simply incapable of doing that. Despite that fact, those videos exist. So somehow that happened. Now we indicate, what's your pleaded theory of how this happened? That the government used an access device to trigger his phone to make the camera come on at a point in time when his camera otherwise couldn't have done that. It is, and I'll say, cell site simulator as a label for other, there are other ones, for instance, there's a Hailstorm, Crossbow, Dirtbox, and hordes of others that have been undisclosed or have since been disclosed by the government that have undisclosed capabilities. And one of those that I'm familiar with having involved is that they can turn your phone on as you sit right there right now. Now they haven't told you that in 2018 when this case arose, and in fact they denied doing it. But what was common at that point in time was the government typically denied doing it. And in fact, there were confidentiality agreements between the government and certain agencies to say, you won't disclose this. You won't tell how you got it. You would call an agent to the stand and ask them these questions? We would ask an agent to the stand as well as our own forensic expert to testify as to the capability of this phone to produce those videos. And going back one step, our position is it was ineffective assistance of counsel to not have done that at the trial level. And so I understand where the burden rests now, but this is an ineffective assistance of counsel argument. Now had he investigated that, I don't know what he would have found out. What my client tells me and what my research indicates would have told me is that the video of my client on the phone at the Blackthorn property, which was what was the only connection to him in terms of a video at the stash house, that his phone is incapable of producing on its own. He could not make it do that. Why was all of this prejudicial anyway? I mean, he owned the place that had all the drugs, money, and so forth. So without the video, that would have been a pretty tough case. Your Honor, again, that's changing the standard of a 2255. What you're saying is, would it matter? And the issue is the only way you don't get a hearing. It isn't whether you will win at trial. It isn't even whether you will win the 2255. The issue is, are there disputed facts that are not conclusively resolved on the record?  But you're only assuming there's no chance. But there was no evidence he was ever there except for the video that they introduced. That's the only evidence he was ever there. I own property, rental property, for instance. I'm not there. Other people might be there, but the primary link in this case to him being at the property was the video. I mean, I take one step back, and the step I take back is, we assume that the government introduces evidence because it's important. We also assume that the evidence is probative of their position. They introduced this evidence for a reason. It wasn't they were bored. I'm sorry. Lawyers gild lilies all the time. Yes, Your Honor. And the jury asked to see these lilies two times during the deliberations. Well, wasn't there, and I could be misremembering the record, so correct me if I'm wrong, but wasn't there cell site information showing him, obviously, maybe not at the house, but in the vicinity of the house at particular times also? It was showing him at the house. I'm sorry. It was showing him at the house. No, I'm not talking about the videos. I'm talking about just cell site information on locations, like location information. Yes, we're not contesting the location information. Yes, because you said there was no other evidence that placed him at or near the house. Right. Him personally at any video or surveillance or anything of that nature, correct. Except that there was location evidence putting him at or near the house. There was location evidence putting his phone at that house. Yes, ma'am. I agree with that. The only evidence of him actually being there was the video. And come on, the phone is there? He owns the house, his phone is there? Those aren't fair inferences for a jury. And if I may just take two seconds, I guess my only point is if the government is surreptitiously obtaining evidence illegally and no one cares, then no one cares. I guess that's the bottom line. I get that, but my point is if that's what's happening and they fail to disclose it and they use that evidence that there should be some repercussion, and according to Brady in other cases there should be one, and the court would then be in a position of imposing an appropriate sanction, even if that sanction is nothing. I couldn't agree more with you on all of this. As long as you put in enough evidence to show that's a reasonable possibility, that's the debate. But you'll get to pursue that further on rebuttal. Yes, your honor. Thank you. Good morning. Good morning, your honors. May it please the court, Amanda Gregory on behalf of the United States. Mr. Watts was convicted at trial of conspiracy to distribute drugs and conspiracy to launder money. Mind my interrupting just on the video. What's your take on the video point that he's saying? We put in evidence that this cell phone couldn't create these videos. We don't know what happened, but the government found a way to do this and we need discovery to figure out how this could have happened. Well, first I would point out, and while this hasn't been consistent in his brief, he does acknowledge that Mr. Watts did admit to filming one of those videos. And in terms of the evidentiary value of the videos, in terms of tying him to the location or giving the jurors an opportunity to hear his voice to be able to compare it to the wiretap recordings, all you need is one of those videos. It could be the one that he admitted that he made versus the other two. Yes, they were on the... The phone couldn't make these videos if one of them was from that phone. I'm just trying to make sure I'm understanding what he's saying. Your honors, I belatedly realized that the videos had not been submitted as part of the record and late last week. So I have sent the videos for your review. I think they're sent to Cincinnati. We're currently in Detroit, so you may not have had the opportunity to review them, but I hope you do get the opportunity to do so. I think that the videos themselves are inconsistent with Watts' account of the videos. All three of the videos appear to be him actively recording himself at his house and speaking on the video with the intent of sending it to someone else. He doesn't... Remind me, you heard him say this, remind me what his evidence is when he said we put on evidence in this 2255 that showed this cell phone could not create these videos. What was that? Yeah, they're... They're no printouts from websites or affidavits. There are statements in the pleading and my understanding is that his... the way they get to that conclusion, and that's a conclusion, is the Apple phone and you go to your camera, the video record button does not appear to be an option. You can take a photo, and in fact, if you hold down the photo option, it'll make a video recording. But, you know, he has made these factual statements. One, that Mr. Watts claims that he did not make these videos, and two, that if you are on an Apple phone, on an active call, that you do not have the option of pressing the button video record. Even if those statements are both accepted as true, it does not lead to the United States use Stingray technology in 2016 to access the phone and activate it and make these video recordings. And again, once you see these video recordings, I think it's a abundantly clear that the record is inconsistent with his statements regarding the videos. I guess, can I ask counsel, I mean, I think one of the points opposing counsel made was you can't, or you shouldn't, or we shouldn't get into the ineffective assistance two-pronged analysis. The question is really, should we have had a hearing to develop this record? And he gets a hearing, it says must, I think in the statute, must have a hearing to resolve factual disputes. Can we kind of backdoor the question of whether or not it was an abuse of discretion to not have a hearing by saying on the second prong of Strickland, there was no prejudice, you know, even if you had introduced this type of evidence, it wouldn't have changed things because of all this other evidence. Can we kind of just... Yeah, I don't think that's backdoor. I think that's exactly what you're supposed to do. You're supposed to say, if these facts are true, would it meet these two prongs? And if it doesn't, then there's no need for a hearing. And there are many cases that say if it's easier to use the second prong, the prejudice prong, then go that route rather than, you know, get sucked into a rabbit hole of, you know, the government hacking into phones. You guys didn't do an affidavit from the trial counsel in response to the 2255? No, we... The initial 2255 was very bare-bones just with the allegations. It was really fleshed out in the reply, so our response did not include an affidavit, and we did not file another document below after the reply. But going to the prejudice prong, as your honors have pointed out, there is ample evidence that would support these convictions even if the two videos that he says he did not make were excluded, or even if, honestly, if even all three of these videos were excluded, and even if there were these non-specified casino records that came in and showed there were some casino win-ins. There was wiretap communications between him, several other people, showing that he was getting ready to receive and pay for a large shipment of drugs in early July. There was ping data when the money was due, showing him going around town, collecting the money, and then there were wiretap calls that alluded to the fact that he was collecting the $400,000 at the time. There was over 30 kilograms of cocaine and several kilograms of heroin that were seized from the truck when the shipment came in. There was the money that he paid for the drugs that was found in the seller's homes, and there was the evidence found in his own home, including six kilograms of fentanyl, a smaller amount of cocaine, scales, vacuum sealers, baggies, and guns. So all of this, even in their best-case scenario where the videos are excluded and there's more evidence that he won some money at the casinos, would be more than enough to sustain the jury's verdict, even assuming that his allegations are true. With respect to the allegations regarding the casino records, as there aren't the records, but there's not even the name of the casino or what would be expected to be found, other than some vague statement that there would be winnings. There were many, many casino records and many, many bank records introduced at trial. I think the reference in the transcript is around 400,000 pages of these records. But even if these records, you know, even if more records came in that showed significant winnings, they wouldn't have impacted the outcome at trial because it wouldn't negate the evidence that he had planned to receive a shipment of drugs, that he had gone around town to collect funds from lower-level dealers to pay for the shipment, then gave his funds to his sister to give to Gonzalez. So it would have negated the drug evidence that was found in the truck or in his home. And because of that, because it's clear from the record that the evidence presented at trial, that based on the overwhelming evidence that the introduction of these speculative casino records and the exclusion of the two videos from Watts phone that he claims he did not make, he would not have been entitled to a hearing. So no factual disputes needed to be resolved for the district court to evaluate these claims. Also point out that a lot of the reasons that he has stated that he wants a hearing, such as to get a forensic examination of the cell phone, that would be more in the realm of discovery than something that would happen in a straight hearing. Same with obtaining the casino records versus subpoena, via subpoena, and there was no certificate of appealability granted with respect to denial of the request for discovery. There was a recent case, Gardner versus the U.S., where this court pointed out that if something should have been obtained through discovery, that's not grounds for an evidentiary hearing. So for these reasons, we would urge you to affirm. You know, I think the court's concern in some regard and the government's argument in some regard suggests that there's a sliding scale of justice based on how guilty we think a person is, and it's our position the Constitution doesn't adjust to either the government's belief or otherwise. That is, if they violated the Fifth and Fourth Amendment and failed to disclose that, and in fact affirmatively hid that, that they should suffer the consequences of that regardless of how they feel about the evidence against the defendant. And in this case, we're not here on a direct appeal challenging that evidence. We're here on a 2255 that says it was ineffective assistance of counsel not to investigate that matter when your client clearly tells you, I didn't make that video. I didn't make it. My phone is incapable of making it. I can't record myself when I'm on a on a face call with somebody and not to at least investigate that and find out what the explanation is. What do you think we're going to think when we see this video? What do you think we're going to see? Yeah. I mean, the government lawyer just said when you look at this, you're going to see it's quite obvious he was making the video. Well, they're going to say, well, obviously his phone is making the video. Have you seen the video? Yes, your honor. Okay, so what are we going to see? You're going to see a video of him talking on the phone and holding the phone out, and he's talking, he's also talking, I think, to it, if my recollection is correct, to some roofers or somebody working on the property at the same time. Now, they can categorize that as him making the video, and he categorizes it as his phone is somehow activated making the video unbeknownst to him. And he's looking at it? What's that? And he's looking at it? He's making a FaceTime call. Yes, he's looking at the phone. Absolutely is. He's talking, like, I mean, if we make a video call to one another, I'm looking at you, absolutely I am, but my phone can't record that, is what we're saying. Of course he's looking at the phone. He's talking to a person he's looking at on the face of his phone. He suggested that the way it starts is as if he made the video, and I'm just, you've seen it. You've answered my question. Yeah, I'm sorry. You think we're going to look at it differently? We'll look at it. And just for context, yes, he's seeing her on the phone. He's not videoing himself on the phone. And so I believe that's what the court will say. And just with just a final one, I think the whole argument comes down to it's overwhelming evidence. And in that instance, that's the wrong test. The test isn't whether there's overwhelming evidence of guilt in this case, or would the government probably still win, or was there other evidence? The question is, is whether or not the facts that he disputes are conclusively resolved by the record. And I don't believe that there is a record. In fact, I believe the government conceded right here before the court that the phone is incapable of doing what what Mr. Watts claims was done. And if that's true, that needs to be flushed out at an evidentiary hearing. Now, they may be right, and if they're right, so be it. But the issue is, was he entitled to at least that hearing to prove his position as well? Okay, thank you very much. Thank you, Your Honor. Both of you for your helpful arguments and submissions. We really appreciate it. The case will be submitted.